IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT B. POSEY, ) | |
| ) | |
| Plaintiff, ) | Case No. CV05-272-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| LAKE PEND OREILLE SCHOOL DISTRICT ) | |
| NO 84, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Robert B. Posey, brings this lawsuit pursuant to federal and state law against Defendants Lake Pend Oreille School District No. 84 ("School District"), its Board of Trustees ("School Board") and former Building Principal Jim Soper, alleging that he was fired from his employment in retaliation for calling attention to student-related safety and security concerns at Sandpoint High School. Defendants have moved for summary judgment and the Plaintiff has opposed the same. The motion is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.[1]

**Background**

Plaintiff was hired by the School District in 1995 as an at-will employee, to work as a parking lot attendant. In March of 1999, Plaintiff's position changed to Security Specialist for the School District. In August of 2002, Defendant Jim Soper became principal at Sandpoint High

---

[1] See Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1998) (holding that "a district court can decide [summary judgment] without oral argument if the parties . . . . ha[ve] had an adequate opportunity to provide the trial court with evidence and a memorandum of law").

MEMORANDUM ORDER - Page 1
07ORDERS\posey_remand.WPD

School. After a review of Plaintiff's work duties in the fall of 2002, Soper instructed Plaintiff that he should cease performing certain administrative disciplinary functions. During this same time period, Soper asked Plaintiff to prepare a new emergency plan to address school safety and security issues. Plaintiff submitted a proposed emergency plan to Soper on October 7, 2002.

During the 2002-2003 school year, Plaintiff developed concerns about discipline and school safety issues. According to the Plaintiff, in November of 2002, Plaintiff, on behalf of several students and faculty members, spoke to Soper about discipline and safety issues. Plaintiff alleges that in response Soper asked for the names of the concerned students and faculty members and stated that he "would have their ass."[2] (Decl. of Robert Posey in Supp. of Pl.'s Resp. ¶ 3). During this same time-frame, Soper is purported to have stated to Nikole Brown, a Drug and Violence Prevention Specialist, that Plaintiff "act[ed] like a super cop" and was a "loose cannon." (Decl. of John Rumel in Supp. of Pl.'s Resp., Attach. 7, Dep. of Nikole Ahner-Brown at 13-14). Likewise, Soper is reported to have stated to Sandpoint Police Officer Corey Coon that he wanted "to get rid" of Plaintiff because in was "too aggressive" in his interactions with the students. (Decl. of John Rumel in Supp. of Pl.'s Resp., Attach. 6, Dep. of Corey Coon at 20-21).

In May of 2003, Plaintiff attended a meeting of the School District's Safe and Drug Free School Advisory Council. Participants at the meeting discussed the lack of coordination between the School District and law enforcement.

Plaintiff's concerns regarding school safety continued into the 2003-2004 school year. On or about October 15, 2003, Plaintiff provided a binder to Steve Battenschlag, School District's Chief Administrative Officer, containing a thirteen page letter and approximately twenty exhibits, that presented Plaintiff's concerns about school security and safety issues. On that same day, Plaintiff and Battenschlag talked on the telephone. Among other things, Battenschlag assured the Plaintiff that he would not be fired because of his stated concerns regarding school safety issues. A few days later, Battenschlag and School District Superintendent Mark Berryhill met with Plaintiff at his house and discussed student safety and security issues.

---

[2]   Defendant Soper denies the incident.

In late November 2003, Battenschlag and Berryhill asked Plaintiff to write a protocol for a School District-wide security position. Posey drafted the protocol and presented it to Battenschlag and Berryhill at the end of November 2003. In December of 2003, the School District assigned Plaintiff to work primarily at Lake Pend Oreille High School, while returning to perform bus duty at Sandpoint High School at the end of every day.

On June 8, 2004, the School Board voted to eliminate, based on budgetary considerations, the Plaintiff's Security Specialist position and a gate security position, and to create a new job description consolidating the general responsibilities of these prior positions. At the same time, the School Board also eliminated two other positions, also for budgetary reasons.

Plaintiff applied and interviewed for the new Preventative Specialist position but he was the second choice of the interviewing panel. Instead, the School District hired an applicant that had a four year college degree, which permitted the new hiree to also serve as a substitute teacher.

On June 16, 2004, Plaintiff filed a grievance with the School District, alleging among other things that the elimination of his position constituted retaliation. By a 2-1 decision, the grievance panel issued a decision in Plaintiff's favor. On January 10, 2005, the School Board overturned the grievance panel's decision.

On November 15, 2004, the School District hired Plaintiff as a lunch duty aide. However, Plaintiff left that position in December 2004 because of financial commitments. In January of 2006, the School District offered Plaintiff the position of School Resource Officer at Sandpoint High School through June 30, 2006. Plaintiff declined the position because his employment was not guaranteed through the 2006-2007 school year.

Plaintiff filed this action in state court on June 17, 2005. Defendants removed the matter to the federal district court on July 8, 2005. In his federal claim, Plaintiff contends that the elimination of his position, and the failure to hire him in the newly configured Preventive Specialist position, constitute retaliation against him for having spoken out about security and safety issues at Sandpoint High School, in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

### Discussions

1. Motion to Stay

After the Defendants' Motion for Summary Judgment had been fully briefed, the Defendants moved for a continuation of scheduling dates and a stay of this action based on certain provisions of the Servicemembers Civil Relief Act, f/k/a Soldiers' and Sailors' Civil Relief Act of 1940 ("SCRA"). Defendants submitted evidence demonstrating that Defendant Soper, a retired army officer, recently was reactivated and was training in preparation for deployment to Iraq. Because of that, Defendants sought a stay until Defendant Soper returned from active duty. The Plaintiff opposed the motion in general, and in particular argued that the SCRA should not apply to the Motion for Summary Judgment. In the Reply, Defendants appear to concur in Plaintiff's suggestion that it is appropriate for the Court to resolve the pending Motion for Summary Judgment. (Defs.' Reply at 2).

The Court agrees that the purpose of the stay provision of the SCRA is not applicable where, as here, the motion being considered by the Court already has been fully briefed, and is under advisement, prior to Defendant Soper's reactivation. As Defendants note, the reason for the stay request is because "Defendant Soper's participation and availability for discovery and trial activities in this matter are a critical necessity." (Defs.' Mem. in Supp., at 2-3). But that rationale does not apply to the pending Motion for Summary Judgment. See, e.g., George P. v. Superior Court, 24 Cal. Rptr.3d 919, 924-25 (Cal. App. 2 Dist, 2005) (explaining that "the SCRA continues to contemplate a stay only when it is necessary to avoid a material impact on the rights of the servicemember"). Accordingly, the Court will now consider the merits of the Defendants' Motion for Summary Judgment.

### 2. Plaintiff's Federal Claim - First Amendment Retaliation

Plaintiff contends that the binder, containing the letter and exhibits concerning school security and safety issues, he presented to School District officials on or about October 15, 2003, caused or motivated the School District to eliminate his position and not rehire him. (Compl. ¶¶ 13-14, 27; Pl.'s Resp. at 20; Decl. of John Rumel in Supp. of Pl.'s Resp., Attach. 2, Pl.'s Dep. 66:11-25; Decl. of Pl. in Supp. of Pl.'s Resp. ¶ 4). Plaintiff further claims that this alleged retaliation violates his First Amendment rights.

The elements relevant to a First Amendment retaliation claim are: "(1) The employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action." Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir. 2006). A recent United States Supreme Court decision, Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), "modified prior First Amendment jurisprudence with respect to the first element -- employee protected speech." Freitag, 468 F.3d at 543. Specifically, in Garcetti the Supreme Court declared that in a First Amendment retaliation case "the issue is not only whether the speech in question addresses a matter of public concern, but also whether it is made *as a citizen*." Id. (emphasis in original). The Supreme Court held " that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 543-44 (quoting Garcetti, 126 S. Ct. at 1959-60).

Defendants assert that Plaintiff's statements to School District officials about school security and safety issues were made pursuant to Plaintiff's duties as the School District's Security Specialist, and not as a citizen, and therefore his statements were not protected by the First Amendment. Plaintiff, on the other hand, disputes the application of Garcetti to his case.

At the time the parties briefed the issue only a few lower court decisions had attempted to apply the Garcetti analysis. Since then, however, four circuit court opinions have been released that help define the Garcetti standard. One decision, in the Freitag case,

is from the Ninth Circuit. When reviewing recent case law, the Tenth Circuit, in <u>Green v. Board of County Com'rs</u>, 472 F.3d 794, (10th Cir. 2007), summarized the <u>Freitag</u> case as follows:

> [<u>Freitag</u>] involved a prison guard who was the target of inappropriate, sexually explicit inmate behavior. When she submitted disciplinary forms documenting the conduct, prison authorities ignored them or acted too slowly for the inmates to be disciplined. 468 F.3d at 533. The guard wrote various memoranda and letters complaining of her supervisors' undermining her authority and allowing the hostile environment and harassment. <u>Id.</u> at 533-34. Later, she filed a discrimination charge with a state agency and wrote two letters to her state senator. <u>Id.</u> at 534-35. The senator requested that the California Office of the Inspector General (IG) investigate the situation; the IG's report substantiated the guard's allegations. <u>Id.</u> at 535. Subsequently, her employment was terminated, and she brought suit. The Ninth Circuit held that she was acting as a citizen in her communications with her senator and the IG, but under <u>Garcetti</u> her internal complaints (with one potential exception, which it left open for the district court to consider) were not protected because they were submitted pursuant to her duties as a correctional officer. <u>Id.</u> at 545-46.

<u>Green</u>, 472 F.3d at 798-99. The Tenth Circuit went on to summarize two other recent circuit court decisions. "In the Eleventh Circuit, <u>Battle v. Board of Regents</u>, 468 F.3d 755 (11th Cir.2006), involved a university employee who reported to university officials improprieties in her supervisor's handling and management of federal financial aid funds. . . . [the Eleventh Circuit held that] she acted 'pursuant to her official employment responsibilities,' and her retaliation claim failed under <u>Garcetti</u>." <u>Id.</u> at 799. And "in the Seventh Circuit, <u>Mills v. City of Evansville</u>, 452 F.3d 646 (7th Cir.2006), involved a police sergeant who criticized a proposal to reorganize the department. . . . the Seventh Circuit held that the communications were made 'in her capacity as a public employee contributing to the formation and execution of official policy,' not as a citizen." <u>Id.</u>

      The Tenth Circuit concluded that all these cases "involved employees trying to focus attention on apparently misguided actions or improper situations [but] [n]onetheless, their conduct was not protectable under the First Amendment." <u>Id.</u> at 801. Consequently, the

Tenth Circuit found that an employee who was fired for disagreeing with her supervisors' evaluation of the need for a formal drug testing policy was not speaking or acting in her capacity as a citizen. Id. at 800-01. This was because the plaintiff "was not communicating with newspapers or her legislators or performing some similar activity afforded citizens; rather, even if not explicitly required as part of her day-to-day job responsibilities, her activities stemmed from and were the type of activities that she was paid to do." Id.

The same result must apply to the Plaintiff's First Amendment claim in this case. In the letter expressing Plaintiff's concerns about school security and safety issues, dated October 10, 2003, and given to School District officials on or about October 15, 2003, Plaintiff begins by stating:

> I have been with this district for almost nine years now. During this time I have seen many things. I have never seen the Sandpoint High School in such an unsafe condition. **Under the current conditions I feel I am unable to provide adequate security for our students and staff. Therefore, I am writing you this letter, with hopes, we can do some things to correct the problems before someone gets seriously hurt.**

(Decl. of Pl. in Supp. of Pl.'s Resp., Ex. A (emphasis added)). The Plaintiff's deposition testimony makes the same point:

> Q. Under the board policy do you know if it is recognized that it is the principal and the teachers who are primarily responsible for our students' safety?
>
> A. **All I know is that it was my job description. You know, as a security person I felt it was a function of my job** and I felt that I couldn't do it with the restrictions that they were putting on me. I didn't want to be the scapegoat if something were to happen.

(Decl. of Brian K. Julian in Supp. of Defs.' Mem., Ex. A, Pl.'s Dep. 98:8-17 (emphasis added)). As the above demonstrates, Plaintiff did not communicate his concerns regarding school security and safety issues to the "newspapers or [his] legislators . . . rather, even if not explicitly required as part of [Plaintiff's] day-to-day job responsibilities, [the] activities

stemmed from and were the type of activities that [he] was paid to do." Green, 472 F.3d at 800-01. The Court concludes, then, that Plaintiff did not speak or act in his capacity as a citizen when informing School District officials of his student-related safety and security concerns, but as an employee of the School District. Therefore, pursuant to Garcetti, summary judgment is appropriate on Plaintiff's First Amendment retaliation claim.

### 3. Plaintiff's State Law Claims

Defendants also challenge the viability of Plaintiff's state law claims. The Court's jurisdiction over Plaintiff's state law claims is supplemental in nature. See 28 U.S.C. § 1367(a). Now that Plaintiff's federal claim is to be dismissed, the Court must consider whether it is appropriate to retain supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1376(c)(3). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir.1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

Here, Plaintiff's state law claims raise novel and complex issue of Idaho law which the Court finds as a matter of comity should be addressed by the state courts.[3] See Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1181 n.28 (9th Cir.2003). Accordingly, the Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims and will remand this action to state court. Id.

### ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that

1. Defendants' Motion to Continue Scheduling Dates and Trial Dates and Stay of Action (docket no. 25) is **DENIED** in regards to the pending motion for summary; and

---

[3] If any state law claim survives summary judgment in state court, that court may be faced with the question of whether to stay the proceedings pursuant to federal law. However, the federal statute in question controls the *timing* of the litigation and not the merits of Plaintiff's remaining claims. It also is a matter that is routinely addressed by state courts. See, e.g., George P. v. Superior Court, 24 Cal. Rptr.3d 919, 924-25 (Cal. App. 2 Dist, 2005). Accordingly, the Court does not believe that the possibility of a stay pursuant to federal law changes the outcome under § 1367(c).

Defendants' Motion for Summary Judgment (docket no. 9) is **GRANTED** with regard to the Plaintiff's federal based claim and that the First Claim for Relief of Plaintiff's Complaint is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Plaintiffs' state law claims and the above-entitled action are **REMANDED** to the district court of the First Judicial District of the State of Idaho, In and For the County of Bonner, No. CV-05-01092 and the Clerk shall mail a certified copy of this Order to the Clerk of the aforesaid Idaho state court.

DATED: **February 2, 2007**

Honorable Edward J. Lodge
U. S. District Judge